**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
)
LEAGUE OF WOMEN VOTERS OF THE )
UNITED STATES, *et al.*, )
)
    *Plaintiffs*, )
)
  v. )    Case No. 16-cv-236 (RJL)
)
BRIAN D. NEWBY and THE UNITED )
STATES ELECTION ASSISTANCE )
COMMISSION, )
)
    *Defendants*, )
)
and )
)
KRIS W. KOBACH, in his official )
capacity as the Kansas Secretary of State )
)
    *Proposed Intervenor-* )
    *Defendant*. )
_____ )


**MOTION OF THE KANSAS SECRETARY OF STATE TO INTERVENE
AS DEFENDANT AND MEMORANDUM IN SUPPORT**

Kris W. Kobach, in his official capacity as the Kansas Secretary of State

(hereinafter "the Secretary") respectfully moves this Court for leave to intervene

pursuant to Federal Rule of Civil Procedure 24(a) and (b).[1] As grounds therefore,

Proposed Intervenor states the following:

## I. INTRODUCTION

In this case, Plaintiffs ask this Court to enjoin the United States Election

Assistance Commission ("EAC") to withdraw its changes to the state-specific

instructions of the National Mail Voter Registration Form ("Federal Form") for the

States of Kansas, Alabama, and Georgia.[2] Plaintiffs also seek the extraordinary

relief of a temporary restraining order ("TRO") and a preliminary injunction *not to

preserve the status quo but to return to a prior set of circumstances*. Plaintiffs

seek this relief on the grounds that they believe the EAC's decision to grant the

States' requested modifications to the state-specific instructions of the Federal

Form is inconsistent with the Administrative Procedure Act ("APA") and the

National Voter Registration Act ("NVRA").

The Secretary respectfully submits that Plaintiffs are wrong on the merits of

their claims, that Plaintiffs have failed to exhaust their administrative remedies

with the EAC, and that Plaintiffs lacks standing to assert any of their claims.

---

[1] A proposed Answer in Intervention is attached hereto as Exhibit 1.

[2] Plaintiffs misleadingly describe the Federal Form as "the national *uniform* mail-in voter registration form." Pl. Mtn. for TRO at 1 (emphasis added). It is not uniform by any stretch of the imagination. The Federal Form contains separate state-specific instructions for each state, which often require different information and forms of proof from applicants, depending on the State. Moreover, contrary to Plaintiffs' assertion, the States did not request that the EAC "amend the … form." *Id.* Rather, the States requested amendments to the state-specific *instructions*, which are on the eighteen pages that follow the form.

Additionally, the Secretary submits that Plaintiffs are asking this Court to create a

situation in which the qualifications for voting in state and local elections in

Kansas would be different from the qualifications for voting in federal elections in

Kansas, in direct violation of Article I, Section 2, of the United States Constitution

("[T]he Electors in each State shall have the Qualifications requisite for Electors of

the most numerous Branch of the State Legislature.").[3]

The Secretary seeks to intervene as a defendant in this lawsuit in order to

protect the interests of the citizens of Kansas and to preserve and defend Kansas

law, which requires county election officers and the Secretary of State's Office to

"accept any completed application for registration, but [provides that] an applicant

shall not be registered until the applicant has provided satisfactory evidence of

United States citizenship."  Kan. Stat. Ann. ("K.S.A.") § 25-2309(l).  Kansas law

thereafter enumerates thirteen different documents that constitute satisfactory

evidence of citizenship.  *Id.*  If Plaintiffs were to prevail, Kansas law would be

defeated by the creation of a loophole for applicants who use the Federal Form and

---

[3] This is because the NVRA and the Federal Form only control registration for "federal
elections." *See* 52 U.S.C. § 20503.  The Supreme Court has accordingly held that the NVRA's
reach extends only to federal elections, and a state's acceptance of the Federal Form must be
understood as mandatory only for "federal elections."  *Arizona v. Inter Tribal Council of
Arizona, Inc.,* 133 S. Ct. 2247, 2251 (2013) (hereinafter "*ITCA*").  That is why it is essential that
the Federal Form requirements for registration mirror the relevant state requirements.
Accordingly, the NVRA requires the EAC to act " in consultation with the chief election officers
of the States" in drafting those instructions.  52 U.S.C. § 20508(a)(2).  Otherwise, the
qualifications for voting in federal elections would differ from those for voting in State elections.

thereby evade the proof-of-citizenship requirement with respect to federal elections.

The Secretary also seeks to intervene to protect the State against the significant administrative cost and chaos that would ensue if this Court were to grant Plaintiffs' requested relief.  Returning to instructions on the Federal Form that did not conform to the requirements of Kansas State law would require the Secretary and the election officers of the State's 105 counties to undertake a massive effort to identify those applicants who used the correct Federal Form (that which conformed to state law) and alter their registration status.  It would also be extremely confusing to the citizens of Kansas if the Kansas-specific instructions on the Federal Form were to yo-yo back and forth in response to the demands of the interests groups who are Plaintiffs in this litigation.

Finally, the Secretary seeks to intervene in this lawsuit to provide this Court with accurate facts that only the Secretary can provide.  Indeed, the Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction contains numerous false or misleading statements.   For example, Plaintiffs suggest that a TRO is warranted because the updated instructions of the Federal Form "jeopardize[] the integrity of" Kansas's March 5, 2016, presidential caucus.  Pl. Mtn. for TRO at 4.  Plaintiffs are evidently unaware that the Kansas presidential caucuses are private events conducted entirely by the State's Republican and

Democratic Parties.  Neither Party's caucus is constrained by the State's voter rolls

or the Kansas instructions of the Federal Form.  Consequently, the Republican and

Democratic Parties are free to allow or prevent participation by anyone they

choose, without regard to whether such participants are qualified to vote under

Kansas law.[4]  Another glaring factual error in Plaintiffs' Motion concerns

Plaintiffs' mischaracterization of the evidence submitted by the Secretary in

support of the State's November 17, 2015, request to the EAC to modify the

Kansas-specific instructions of the Federal Form.  Plaintiffs falsely claim that the

spreadsheet of aliens who had attempted to register in one Kansas county

"included individual cases of alleged non-citizen registration that had already been

submitted to the EAC" (implying that all of the eighteen aliens identified on the

spreadsheet had already been submitted as evidence to the EAC).  *Id*. at 14.  That is

false.  Only *one* of the eighteen aliens who successfully registered to vote or

attempted to register to vote and were listed on the 2015 spreadsheet had been

previously submitted to the EAC.[5]  It is essential that this Court have accurate

factual information before attempting to render any decision in this matter.

---

[4] For example, the Kansas Republican Party allows 17-year-old residents to participate in the caucus, even though such individuals are prohibited from voting in Kansas elections.

[5] That was the alien designated by registration number 1447321.  She registered to vote in 2004, prior to Kansas's proof of citizenship requirement, and voted in elections in 2004, 2005, 2007, and 2008.  See spreadsheet that accompanied Kansas's 2015 request to modify state-specific instructions, attached as Exhibit 2.  None of the other seventeen aliens on that spreadsheet had been presented as evidence to the U.S. District Court for District of Kansas in 2013 (or to the EAC in 2014).  In 2013, the State of Kansas had presented evidence to the district court

In summary, intervention by the Secretary will ensure that the interests of his office and of the State of Kansas are adequately protected and preserved; and it will ensure that this Court is presented with relevant and accurate factual information.

## II.    BACKGROUND

### A.    Kansas's Proof-of-Citizenship Law

In 2011, the Kansas Legislature passed and the Governor signed into law HB 2067, the "Secure and Fair Elections Act," which amended various Kansas statutes concerning elections.  The law was enacted with large bipartisan majorities, passing  by a vote of 111-11 in the House of Representatives and 32-8 in the Senate.  In addition to requiring photographic identification from voters at the time of voting, the law required voters to provide evidence of United States citizenship at the time of registration.  Section 8(l) of HB 2067, codified as Kan. Stat. Ann. 25-2309(l), provides:  "The county election officer or secretary of state's office shall accept any completed application for registration, but an applicant shall not be registered until the applicant has provided satisfactory evidence of United States citizenship."  The law enumerated thirteen different documents that constitute satisfactory evidence of citizenship, enabling Kansas election officials to assess the

---

regarding twenty aliens on the State's voter rolls who had been discovered in 2009 and 2010 by cross-checking the rolls with known alien holders of temporary driver's licenses.

eligibility of voter registration applicants. *Id*. The proof of citizenship

requirements took effect on January 1, 2013.

**B.      *Arizona v. Inter Tribal Council of Arizona* and Subsequent Litigation**

This case begins with the United States Supreme Court's decision in *Arizona*

*v. Inter Tribal Council of Arizona, Inc.* ("*ITCA*"), 133 S. Ct. 2247 (2013). In *ITCA*,

Justice Scalia's majority opinion recognized that Article I, Section 2 of the United

States Constitution reserves to the States the exclusive power to establish the

qualifications of voters and stated, "Since the power to establish voting

requirements is of little value without the power to enforce those requirements,

Arizona is correct that it would raise serious constitutional doubts if a federal

statute precluded a State from obtaining the information necessary to enforce its

voter qualifications." *Id*. at 2258–59. The Court further stated that "the Elections

Clause empowers Congress to regulate *how* federal elections are held, but not *who*

may vote in them." *Id*. at 2258. On the other hand, the Court recognized that the

NVRA requires states to "accept and use" the Federal Form, *id*. at 2257, which at

that time did not include state-specific instructions that matched Arizona's state

law requiring registrants to provide documentary proof of citizenship. Therefore,

the Supreme Court specifically suggested that Arizona renew its request to the

Election Assistance Commission's ("EAC") to modify the federal form to require

proof of citizenship in the Arizona-specific instructions. If the EAC declined to

honor that request, then the State should "seek a writ of mandamus to 'compel

agency action unlawfully withheld or unreasonably delayed'" and/or "assert a

constitutional right to demand concrete evidence of citizenship apart from the

Federal Form." *Id*. at 2260, n.10 (*quoting* 5 U.S.C. §706(1)).

Following the suggestion of the majority opinion in *ITCA*, the State of

Kansas and the State of Arizona again requested in 2013 that the EAC modify the

state-specific instructions of the Federal Form to reflect their respective proof-of-

citizenship requirements.  At that time, the EAC lacked any commissioners and

lacked an executive director, and the Acting Executive Director Alice Miller said

that she therefore could not act on the States' requests.[6]  The States sued in the

United States District Court for District of Kansas.  *Kobach v. Election Assistance*

*Commission*, 6 F. Supp. 3d 1252 (D.Kan. 2014).  After the district court ruled that

the EAC must answer the States' requests, the EAC Acting Executive Director

went beyond the district court's order and took the unprecedented step of first

asking for public comments before answering the States' request.  *Never before*

*had the EAC asked for public comment on any state request for modification of the*

*state-specific instructions of the Federal Form*.  There had been dozens of requests

by States across the country since the Federal Form was first created, and not once

---

[6] The Plaintiffs repeatedly and misleadingly refer to the Acting Executive Director during this
period as the "Executive Director." See Pl. Mtn. for TRO 9, 10, 11, 12.  This is more than a
minor distinction.  The unprecedented and unusual step of putting a state request for
modifications to state-specific instruction out for public comment was not taken by a duly-
empowered Executive Director appointed by the EAC's Commissioners.

had such a request ever been subjected to public comment.  Rather, the States

simply asked; and the EAC responded.

After the refusal of the Acting Executive Director to grant the States'

requests, the States renewed their demand for relief in the district court.  The

district court reversed the Acting Executive Director's denial, holding as follows:

"Consistent with *ITCA*, because the states have established that a mere oath will

not suffice to effectuate their citizenship requirement, 'the EAC is therefore under

a nondiscretionary duty' to include the states' concrete evidence requirement in the

state-specific instructions on the federal form"  *Id.* at  1271 (D.Kan. 2014) (*quoting*

*ITCA*, 133 S. Ct. at 2260).  The Tenth Circuit reversed.  The panel held that the

NVRA granted EAC broad discretion to determine what information is necessary

for state officials to assess voter eligibility and therefore had the authority to deny

the States' requests.  *Kobach v. Election Assistance Commission*, 772 F.3d 1183

(10th Cir. 2014), cert. denied 133 S. Ct. 2891 (2015).

C.     **Kansas Makes a Different Request for Modification of the
Kansas-Specific Instructions of the Federal Form**

In the year that passed between the Tenth Circuit's decision on November 7,

2014, and the State of Kansas's November 17, 2015, request to the EAC to modify

the Kansas-specific instructions of the Federal Form several significant

developments occurred.  First, the United States Senate confirmed a quorum of

commissioners on the EAC.  Second, those Commissioners acted official to

appoint Brian Newby to the post of Executive Director of the EAC.  Third, the

State of Kansas promulgated regulations stipulating that applicants for voter

registration would have 90 days to complete their applications by providing proof

of citizenship to the relevant county election office.  Failure to do so would result

in the "cancellation" of the application record, but the applicant was free to fill out

the five-line application once again as often as he wished and give himself another

90 days to provide proof of citizenship.  *See* K.A.R. § 7-23-15.

Against the backdrop of these new rules modifying registration procedures,

and with a duly-appointed EAC Executive Director capable of approving state

requests for modification of the state-specific instructions, on November 17, 2015,

the State of Kansas requested instruction language significantly different from

language requested in 2013.  Specifically, (1) the new language included the 90-

day limit imposed  by K.A.R. § 7-23-15, (2) the new language listed the thirteen

acceptable documents under Kansas law that constitute sufficient evidence of

citizenship, (3) and the new language notified applicants of their right under

K.S.A. § 25-2309(m) to submit other evidence of citizenship.  See Exhibit 2.

In addition, the Secretary provided to the EAC a spreadsheet of eighteen

cases of aliens who had either successfully registered to vote prior to Kansas's

proof of citizenship requirement, or who had been successfully prevented from

registering after the law went into effect.  All but one of these cases were newly

discovered and had not been presented to the district court in 2013 or the EAC's

Acting Executive Director in 2014.  Notably, the spreadsheet included a case of an

alien who used the Federal Form to attempt to register.  This case dispelled the

nonsensical argument that somehow the affirmation of U.S. citizenship on the

Federal Form was more powerful to prevent fraud than the affirmation of U.S.

citizenship on the state forms.

On January 29, 2015, EAC Executive Director Brian Newby granted

Kansas's requested modification of the state-specific instructions of the Federal

Form, along with similar requests by the States of Georgia and Alabama.  See

Exhibit 3.  Contrary to the false assertion of the Plaintiffs that "[t]he Executive

Director provided no written explanations for these decisions," Pl. Mtn. for TRO

18, the Executive Director issued a written memorandum explaining in detail the

basis for the decisions.  That memorandum is in the possession of Defendants.

For the past three weeks, the State of Kansas has been operating under the

revised instructions.  The Secretary issued guidance to Kansas's 105 counties, and

Kansas has accepted hundreds of applications to register to vote in that time span.

Now that the instructions on the Federal Form conform to the instructions on the

state form and conform to the requirements of State law, the administration of

elections in the State of Kansas has become significantly less burdensome.

Because the Federal Form did not conform to state law during the federal election

cycle of 2014, and because 383 Kansans had used the Federal Form and failed to provide proof of citizenship prior to the November 4, 2014, election, the Secretary had to administer a statewide election in which those 383 individuals would be qualified to vote for federal offices only, consistent with the terms of the NVRA and the *ITCA* decision.  The State is now free to treat all registration forms in the same way and will not need to administer a separate process for Federal Form registrations who decline to provide proof of citizenship.  If this Court were to grant Plaintiffs' requested relief, those administrative burdens would return, and Kansas elections would once again be vulnerable to voting by aliens.

## III.   PROPOSED INTERVENOR THE KANSAS SECRETARY OF STATE

As the elected Kansas Secretary of State, Kris W. Kobach is the chief elections officer of the State and is charged with the administration of elections in the State of Kansas.  The Secretary issues instructions to all of Kansas's 105 counties directing those counties how to conduct elections and issues the Kansas Election Standards, which are rules governing Kansas elections.  The Secretary is the State official charged with implementing Kansas election laws and promulgating regulations to effect such implementation.  The Secretary is the officer designated by the NVRA to consult with the EAC in drafting the state-

specific instructions of the Federal Form. The Secretary also holds the authority to prosecute cases involving elections crimes under Kansas law.

Kansas's proof-of-citizenship law was drafted by the Secretary, and the Secretary is charged with implementing it. It is a core responsibility of the Secretary to ensure the accuracy of the State's voting rolls and to ensure that only United States citizens are registered to vote. Indeed the NVRA itself imposes a responsibility on the Secretary to do the same. One of the stated purposes of the NVRA is "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(4).

If successful, Plaintiffs' attempt to reverse the January 29, 2016, decision of the EAC will impair the ability of the Secretary to carry out his constitutional and statutory duties concerning the administration of elections. It will impose an immense administrative burden on the State by requiring separate procedures for Federal Form applicants who decline to provide proof of citizenship. And it will carve out an immense loophole in Kansas law that allows aliens to register and vote in federal elections.

## IV. INTERVENTION AS A MATTER OF RIGHT

To intervene as of right under Rule 24(a)(2), an applicant must meet the following requirements, described by the D.C. Circuit as follows: "In deciding

whether a party may intervene as of right, we employ a four-factor test requiring:

1) timeliness of the application to intervene; 2) a legally protected interest; 3) that

the action, as a practical matter, impairs or impedes that interest; and 4) that no

party to the action can adequately represent the potential intervenor's interest.

*Public Citizen v. Federal Election Commission*, 788 F.3d 312, 320 (D.C. Cir.

2015) (*citing Deutsche Bank Nat'l. Trust Co. v. FDIC,* 717 F.3d 189, 192 (D.C.

Cir. 2013).  The Proposed Intervenor easily meets these criteria.

### A.    Intervention is Timely.

Plaintiffs filed its Complaint on February 12, 2013.  This motion to

intervene is being submitted seven days after Plaintiff initiated this action.

Accordingly, there is no delay and hence no prejudice to the existing parties.

However, the Secretary *would* be prejudiced if he were not allowed to intervene, as

the Secretary would be left without a reasonable opportunity to protect his official

interests and the interests of the State of Kansas in ensuring that its laws are

enforced.

### B.    The Secretary Has a Legally-Protected Interest.

The requirement that a proposed intervenor have a legally-protected interests

is not particularly demanding.  In determining whether a proposed intervenor has

such an interest, courts favor the disposition of lawsuits "by involving as many

apparently concerned persons as is compatible with efficiency and due process."

*Nuesse v. Camp*, 385 F. 2d 694, 700 (D.C. Cir. 1967).  "If an absentee would be

substantially affected in a practical sense by the determination made in an action,

he should, as a general rule, be entitled to intervene."  Fed.R.Civ.P. 24  (Advisory

comment to 1996 amendment).

If the Secretary is unable to require proof of citizenship from registration

applicants who use the Federal Form, the Secretary will be unable to enforce

Kansas law at K.S.A. 25-2309(l) with respect to such voters.  The Secretary is the

State official charged with enforcing State law in this respect, and a sovereign

State has a legally-protectable interest in the enforcement of its law.  In addition,

the integrity of the election process in Kansas, which the Secretary and

constitutionally and statutorily charged with ensuring, would be severely

undermined.   And finally, if the Secretary is unable to require proof of citizenship

from registration applicants who use the Federal Form, theSecretary's duties to

oversee and conduct elections in Kansas will be made more burdensome and

costly, for the reasons described above.

> **C.     The Disposition of This Case Could Impede or Impair the
>          Secretary's Interests.**

As described above in Sections IV.A. and IV.B., an unfavorable disposition

in this action will directly harm the Secretary and the interests that he is charged

with defending.  An adverse Court ruling will have a direct impact on the

Secretary.  Indeed, the principal remedies that the Plaintiffs seek are (1) voiding

the amendments to the state-specific instructions of the Federal Form, and (2)

vacatur of the letters to the States of Kansas, Alabama, and Georgia.  Complt. 31-

32.  It is self-evident that the Secretary's interest are directly affected by the

requested relief; and an adverse ruling would impair those interests.

### D.     Adequacy of Representation.

The burden under this prong has been described as "minimal," as a party

seeking to intervene needs to show only that representation of his interest may be

inadequate.  *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10 (1972).

The D.C. Circuit has stated, "[W]e have described this last requirement for

intervention as 'not onerous' … or 'low.'"  *Public Citizen*, 788 F. 3d at 321

(*quoting Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735, 736 n.7(D.C. Cir.

2003)).  As this Court has noted, in order to satisfy the requirement, the potential

intervenor  must simply show that "representation of its interests *may* be

inadequate."  *County of San Miguel, Colo. v. MacDonald*, 244 F.R.D. 36, 48

(D.D.C. 2007).  The burden of making the showing is treated as minimal.  *Id*.

Defendants' representation is inadequate to protect the Secretary's interests

for three reasons.  First, in the previous case concerning Kansas's 2013 requested

language, *Kobach v. Election Assistance Commission*, 772 F.3d 1183 (10th Cir.

2014), the United States Department of Justice drafted the response to Kansas's

2013 request and presented that response to the States as if it were coming from the

EAC itself.  In effect, the Department of Justice commandeered the vacant ship that was the EAC and used that vessel to fight against the interests of the State of Kansas.  It was not a bipartisan commission that rejected Kansas's request, but a partisan Justice Department.  The Secretary cannot now be confident that the Department of Justice will defend the interests of the State of Kansas.  Consequently, the Secretary does not believe that the interests of the Department of Justice and those of the State of Kansas are sufficiently aligned to deny intervention.

Second, the Defendants do not possess the Secretary's wellspring of data about attempted voter registrations by aliens in Kansas and the conduct of elections in Kansas.  Without that information, the Defendants cannot adequately gauge the size and scope of the threats to the integrity of Kansas's voter rolls.  Defendants cannot weigh these threats and consider the factual data that Kansas has at its disposal.

Third, the costs of an adverse ruling for Defendants are not as high as the costs of an adverse ruling to the State of Kansas.  Such a ruling would impose an immense administrative and fiscal burden on the Secretary.  Consequently, the Secretary is not confident that the Defendants will defend this case with the degree of diligence and vigor that the Secretary requires.

## V.     IN THE ALTERNATIVE, PERMISSIVE INTERVENTION SHOULD BE GRANTED.

Fed. R. Civ. P. 24(b)(2) governs permissive intervention by a state governmental officer and provides:

> *By a Government Officer or Agency.* On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:
> (A) a statute or executive order administered by the officer or agency; or
> (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

Rule 24(b)(2)(A) plainly applies in the instant case. The Secretary is charged with administering the Kansas statute that was the basis for Kansas's request to the EAC in the first place – K.S.A. § 25-2309(l), which prohibits the registration of any person who has not provided evidence of United States citizenship. The Secretary's claims are principally based on the duty to enforce that statute and on the defense that there is no conflict between that statute and the NVRA, as interpreted by the Supreme Court in *ITCA*. Rule 24(b)(2)(B) plainly applies as well. K.A.R. § 7-23-15 is a "regulation … made under the statute" that the Secretary is claiming he can enforce. The Secretary will demonstrate that such enforcement is consistent with the NVRA.

Finally, Rule 24(c) requires the Court to consider whether permissive intervention will cause undue delay or prejudice the adjudication of the rights of the existing parties. As described above, in this instance no prejudice or delay will

result from intervention.  The Secretary, serving as counsel, will present at the

TRO hearing on February 22, 2016, and the Secretary's participation will not

affect the scheduling of this case in any way.  Thus, at a minimum, the Secretary

respectfully request that he be granted permissive intervention.


## VIII.  <u>CONCLUSION.</u>

For the forgoing reasons, the Secretary respectfully requests that this Court

grant the Secretary leave to intervene in this action.


Dated:  February 19, 2016                    Respectfully submitted,

                                             /s/ Kris W. Kobach*
                                             Kris W. Kobach
                                             *Pro hac vice application pending
                                             Kansas State Bar No. 17280
                                             Office of Kansas Secretary of State
                                             120 S.W. 10th Ave.
                                             Topeka, KS 66612
                                             Telephone: (785) 296-4575
                                             Facsimile: (785) 368-8033
                                             Email: kris.kobach@sos.ks.gov

                                             Dale L. Wilcox
                                             D.C. Bar No. 1012380
                                             John M. Miano
                                             D.C. Bar No. 1003068
                                             IMMIGRATION REFORM LAW
                                             INSTITUTE
                                             25 Massachusetts Ave, Suite 335
                                             Washington, DC  20001
                                             Telephone: (202) 232-5590
                                             Facsimile: (202) 464-3590
                                             E-mail: dwilcox@irli.org
                                             *Counsel for Proposed Intervenor-Defendant*

## CERTIFICATE OF CONFERENCE

The undersigned counsel certifies that he has attempted confer with counsel for Plaintiffs by email on February 18, 2016, and has received no answer from Plaintiffs with respect to whether or not they support or oppose this motion for intervention.  The undersigned counsel certifies that he has conferred with counsel for Defendants via telephone call on February 18, 2016.  Counsel for Defendants stated that Defendants neither support nor oppose this this motion for intervention.

Dated:  February 19, 2016

/s/ Kris W. Kobach
Kris W. Kobach


## CERTIFICATE OF SERVICE

I hereby certify that I did serve a copy of this Motion of the State of Kansas to Intervene as Defendant and Memorandum in Support on all counsel who have made appearance in this case and consented to service by electronic means through the Electronic Case Filing system.

Dated:  February 19, 2016

/s/ John M. Miano
John M. Miano