**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, LEAGUE OF WOMEN VOTERS OF ALABAMA, LEAGUE OF WOMEN VOTERS OF GEORGIA, LEAGUE OF WOMEN VOTERS OF KANSAS, GEORGIA STATE CONFERENCE OF THE NAACP, GEORGIA COALITION FOR THE PEOPLE'S AGENDA, MARVIN BROWN, JOANN BROWN, and PROJECT VOTE, <br><br> Plaintiffs, <br><br> v. <br><br> BRIAN D. NEWBY, in his capacity as the Executive Director of The United States Election Assistance Commission; and UNITED STATES ELECTION ASSISTANCE COMMISSION <br><br> Defendants. <br><br> KANSAS SECRETARY OF STATE KRIS W. KOBACH and PUBLIC INTEREST LEGAL FOUNDATION <br><br> Defendants-Intervenors | Civil Case No. 16-cv-236 (RJL) |

**PLAINTIFFS' MOTION TO EXCLUDE CHRISTY MCCORMICK'S TESTIMONY AND FOR A PRESERVATION ORDER**

Pursuant to the Court's February 29 Minute Order and Federal Rule of Civil Procedure 45, Plaintiffs served a deposition subpoena on non-party Election Assistance Commissioner Christy A. McCormick. Plaintiffs' subpoena also included a request for production of five categories of documents that Ms. McCormick possesses containing information relevant to the issues upon which the Court permitted her deposition. A copy of the subpoena is submitted herewith. (Exhibit A). Ms. McCormick refused to comply with the document request portion of Plaintiffs' subpoena, and as a result, did not produce a single document to Plaintiffs prior to her deposition, though she admitted she produced to or exchanged with the Defendant-Intervenors documents responsive to Plaintiffs' subpoena. Ms. McCormick further admitted at her deposition that after receiving Plaintiffs' subpoena, she destroyed documents responsive to it. Accordingly, Plaintiffs' respectfully move the Court for an order requiring Ms. McCormick and Intervenor-Defendants to preserve documents responsive to the subpoena or otherwise relevant to this case going forward, and excluding Ms. McCormick's deposition testimony, as well as the materials she brought to her deposition (Exhibits 8, 11 & 12) and other internal EAC documents that are not part of the administrative record.[1]

## BACKGROUND

As the Court is aware, the deposition of Ms. McCormick was ordered at the request of Intervenor Kobach, over the objections of the parties, with the understanding that it would have to be completed on an expedited schedule due to the pending Preliminary Injunction hearing. During the February 22 and February 29 conferences respectively, Mr. Kobach represented (i)

---

[1] Pursuant to Local Rule 7(m), Plaintiffs met and conferred with Ms. McCormick's counsel, and the other parties. Counsel for Ms. McCormick indicated that he wanted to consult with his client about the motion, and did not report back on his position. Defendants consent to the motion to exclude Ms. McCormick's testimony based on privilege and take no position on any other issue. Defendant-Intervenors oppose this motion.

1

that Ms. McCormick had approached Intervenors and agreed to be deposed as early as March 1

in Kansas and (ii) that Mr. Kobach had previously been provided with documents or information

by Ms. McCormick that supported Mr. Kobach's representation to the Court that a Department

of Justice attorney wrote a memorandum issued by Ms. McCormick's agency in January 2014.

*See* 2/22/16 Tr. at 59:10-61:8 ("the records of memoranda that passed between the Department

of Justice and the EAC's acting director at the time established that they did, indeed, draft the

opinion . . . the EAC Chair [Ms. McCormick] is present and can confirm any of this")

(Exhibit B).  After the Court ordered Ms. McCormick's deposition, Plaintiffs' requested the

following documents: any communications with, documents provided to, or documents discussed

with the Intervenors that relate to this litigation or the allegations in the complaint, as well as any

documents reviewed in preparation for her deposition testimony or documents about which she

intended to testify.  *See* Exhibit A.

In a subsequent email (Exhibit C), Intervenor Kobach specifically represented that one of

the reasons he wanted to delay the start time of the deposition to 1:00 P.M. was that the time was

"more convenient for [Ms. McCormick] to travel to DC and obtain any documents that she may

bring."  In the same email, Intervenor Kobach specifically acknowledged that "we agree that

document categories 4-5 are within the discussed scope" of the deposition (categories 4-5 being

documents that Ms. McCormick reviewed or intended to testify about).

Despite the clear relevance of the document requests to the scope of the deposition

ordered by this Court, and Intervenor Kobach's admission that at least some of the requests are

within the scope of the deposition, Ms. McCormick's attorney, Robert Popper, objected that

Plaintiffs' subpoena "could not have been complied with in the extraordinarily short time frame

of two days that it specifies."  Mar. 2, 2015 Email from Robert Popper (Exhibit D).  Not only did

Ms. McCormick fail to comply with the subpoena, Mr. Popper admitted instructing her to ignore the subpoena. *See* McCormick Depo. At 122 ("Q.  What steps did you take to comply with [the subpoena]?  A.  I didn't take any steps to comply with this document. . . Q.  Did you take any steps to look for documents in response for this? . . . MR. POPPER:  And I can speak to this.  I instructed her that she did not have to comply.").[2]

Although Ms. McCormick did not produce documents responsive to Plaintiffs' subpoena prior to her deposition, it was clear from her deposition that she had provided some of the very documents at issue to Intervenors prior to the deposition.  Notably, Intervenor Kobach used such documents during his examination of Ms. McCormick.  *See* Dkt 53-4 (Exhibit 12 to Ms. McCormick's Deposition); Dkt 53-5 (Exhibit 8 to Ms. McCormick's Deposition); Dkt 53-6 (Deposition Excerpts of Ms. McCormick's Deposition).

Further, it became abundantly clear once Plaintiffs began questioning Ms. McCormick that not only had she done nothing to comply with the subpoena, but that she clearly had documents responsive to multiple of the document requests, including (i) emails and texts with Intervenor Kobach, and (ii) "[h]undreds and hundreds of emails with [PILF attorney] Mr. Adams."  McCormick Depo. at 123-27.  Further, after admitting that she had taken no steps to preserve such communications, she testified that *she had deleted text message exchanges she had with Mr. Kobach as recently as the night before the deposition* (i.e. after receiving Plaintiffs' subpoena).  *See* McCormick Depo. at 132-33.

---

[2] Exhibit E includes excerpts of Ms. McCormick's deposition testimony cited in this motion that do not reflect potentially privileged information.

## <u>ARGUMENT</u>

### I.      The Court Should Enter a Preservation Order

Based on Ms. McCormick's destruction of evidence responsive to Plaintiffs' subpoena and the fact that that evidence was communications with Intervenor Kobach, the Court should enter a preservation order requiring Ms. McCormick and Defendant Intervenors to preserve all communications and other documents responsive to the subpoena or otherwise relevant to this litigation.

This Court plainly has the authority to issue such orders.  "[C]ourts have held that they have the inherent power to order that evidence be preserved and have, for good cause, required that specific procedures be adopted to ensure such preservation." *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 135 (2004) (collecting authorities).  "[S]uch preservation orders are common in complex litigations, and are increasingly routine in cases involving electronic evidence, such as e-mails and other forms of electronic communication." *Id.* at 136 (quotations and citations omitted).

The party seeking a preservation order must demonstrate that it is (1) necessary and (2) not unduly burdensome. *See id.* at 138 (citing *Walker v. Cash Flow Consultants, Inc.*, 200 F.R.D. 613, 617 (N.D.Ill.2001); *Adobe Sys., Inc. v. S. Sun Prod. Inc.*, 187 F.R.D. 636, 642–43 (S.D. Cal. 1999)).  "To meet the first prong of this test, the proponent ordinarily must show that absent a court order, there is significant risk that relevant evidence will be lost or destroyed—a burden often met by demonstrating that the opposing party has lost or destroyed evidence in the past or has inadequate retention procedures in place." *Pueblo*, 60 Fed. Cl. at 138 (citing *In re Potash*, 1994 WL 1108312, at *8 (D.Minn. Dec.5, 1994)).  "More than that, the proponent must show that the particular steps to be adopted will be effective, but not overbroad—the court will

4

neither lightly exercise its inherent power to protect evidence nor indulge in an exercise in futility." *Id.*

Here, Ms. McCormick has already conceded that she destroyed evidence responsive to the subpoena. *See* McCormick Depo. at 132-33 ("Have you deleted any text messages [with] Mr. Kobach or Mr. Adams?  A.  Yes, I normally delete all of my texts.  Q.  When was the last -- . . . A.  Last night."). Furthermore, there would be virtually no burden on Ms. McCormick or Defendant-Intervenors to preserve this evidence.  This is not a case where the documents requested to be preserved involve large amounts of data, but rather, this is a very specific set of communications and documents in the hands of Ms. McCormick's and Defendant-Intervenors' control.

The Court should enter a preservation order requiring Ms. McCormick and Defendant Intervenors to preserve all communications and other documents relevant to this litigation.

**II.    The Court Should Exclude Ms. McCormick's Testimony**

**A.    Ms. McCormick's Testimony and Exhibits 8, 11 and 12 Should be Excluded Because She Lacked a Foundation to Testify About Events Prior to Her Appointment as  Commissioner, Her Testimony is Speculative Opinion, and Her Testimony and These Documents Are Outside of the Administrative Record**

Under the Rules of Evidence and Civil Procedure, Ms. McCormick's testimony and Exhibits 8, 11, and 12 should be excluded for two separate reasons.  First, "a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Fed. R. Evid. 602; *see also U.S. ex rel. El-Amin v. George Washington Univ.*, 533 F. Supp. 2d 12, 25-26 (D.D.C. 2008) ("Federal Rule of Evidence 602 requires that non-experts testify only as to matters of which they have personal knowledge; its purpose is to assure reliability.").  Additionally, under Rule 701(a), a lay witness's testimony must be "rationally based on the witness's perception."  Fed. R. Evid. 701(a).

5

Ms. McCormick's testimony regarding Exhibits 8, 11 and 12 was not based on her personal knowledge and should be excluded.  Ms. McCormick did not start working at the Commission until January 13, 2015, well after the communications that constitute Exhibit 8 (which were almost entirely dated in 2013 and January 2014), and Exhibits 11-12 (which were dated between 2000 and 2004).  Much of Ms. McCormick's testimony was based solely on her review and interpretation of privileged EAC communications between DOJ and former Executive Director, Alice Miller.  Ms. McCormick had no foundation to interpret these documents because she was not at the Commission at the time of any of the relevant events. Because she does not have any personal knowledge of events that pre-date her time at the EAC, Ms. McCormick's testimony amounts to improper speculation and opinion.  Such testimony is inadmissible.  *See, e.g.*, *Youssef v. Holder*, 75 F. Supp. 3d 148, 160 (D.D.C. 2014) (excluding witness's testimony because it was an opinion that was "purely speculative" and not based on "any other personal knowledge").

The EAC's internal documents speak for themselves, and Ms. McCormick's summary of those documents and her own opinions extrapolated from them lack foundation and are improper speculation.[3]  The Court should exclude Ms. McCormick's testimony and Exhibits 8, 11 and 12 on this basis.

Second, this is an Administrative Procedures Act case and because Ms. McCormick's testimony and Exhibits 8, 11, and 12 are outside the administrative record, they should be excluded from consideration in this case.  In an APA case, "the court's review is limited to the

---

[3] Indeed, even expert testimony is inadmissible where it is simply based on documents that "speak for themselves."  *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (precluding expert from providing history of drug because testimony would be merely reading, selectively quoting from, or regurgitating evidence); *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005) (excluding "expert" testimony offered "for the purpose of constructing a factual narrative based upon record evidence").

administrative record," *Fund for Animals v. Babbitt*, 903 F.Supp. 96, 105 (D.D.C.1995) (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). In such circumstances, the Court's role is limited to "determin[ing] whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club v. Mainella*, 459 F.Supp.2d 76, 90 (D.D.C.2006) (citation and internal quotation marks omitted).

### B. Exclusion is Appropriate Because Ms. McCormick's Deletion of Responsive Text Messages was a Violation of Her Duty to Preserve Evidence

"A party has a duty to preserve potentially relevant evidence . . . once [that party] anticipates litigation." *Zhi Chen v. Dist. of Columbia*, 839 F. Supp. 2d 7, 12 (D.D.C. 2011); *see, e.g.*, *William T. Thompson Co. v. Gen. Nutrition Corp.*, 593 F. Supp. 1443, 1445 (C.D. Cal. 1984), *aff'd* 104 F.R.D. 119 (C.D. Cal. 1985); *National Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557-58 (N.D.Cal. 1987) (the duty to preserve extends to representatives of an agency). The District of Columbia Court of Appeals has made clear that "a plaintiff has a legally protectable interest in the preservation of evidence required for securing recovery in a civil case." *Holmes v. Amerex Rent-A-Car*, 710 A.2d 846, 848 (D.C. 1998). "Recognizing acts of spoliation and punishing the spoliators is the result of judicial recognition that the 'spoliated physical evidence' is often the best evidence as to what has really occurred and that there is an inherent unfairness in allowing a party to destroy evidence and then to benefit from that conduct." *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 284 (E.D. Va. 2001); *see also Battocchi v. Washington Hosp. Ctr.*, 581 A.2d 759, 766 (D.C. 1990) (rule of spoliation "derives from the common sense notion that if the evidence was favorable to the non-producing party's case, it would have taken pains to preserve and come forward with it").

In addition to the sanctioning authority provided by the Federal Rules, it is well established that when "rules alone do not provide courts with sufficient authority to protect their

7

integrity and prevent abuses of the judicial process," courts have an inherent power to impose sanctions for abusive litigation practices. *Shepherd v. Am. Broad. Co.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995). A court's inherent authority enables the court to enter a wide variety of sanctions against the disobedient party, including "precluding the admission of evidence." *Id.* at 1474-75; *see also Young v. Office of the U.S. Senate Sergeant at Arms*, 217 F.R.D. 61, 70 (D.C. 2003) (noting for example that "the Court in this case could bar Plaintiff from introducing any evidence of her emotional disability claims because of her failure to provide medical records and cooperate in the independent medical evaluation").

As set out above, Ms. McCormick received Plaintiffs subpoena and was aware of the request to produce responsive documents. Once she received Plaintiffs' subpoena, it is beyond cavil that Ms. McCormick had a duty to preserve that evidence. But instead, she ignored Plaintiffs' subpoena and deleted her text message communications with Kobach. Ms. McCormick's (and her counsel's) status as an experienced attorney only increases her culpability in this instance. *See Jeanblanc v. Oliver Carr Co.*, Civ. A. No. 91-0128 (JHG), 1992 WL 189434, at *2 (D.D.C. July 24, 1992) (emphasizing that the spoliating party was an attorney who had worked as a professor of law for 20 years and had practiced law for another 20 years). Ms. McCormick's deletion of text messages amounts to a failure to comply with the duty to preserve documents responsive to the subpoena or otherwise relevant to this case. This Court should exclude Ms. McCormick's deposition testimony and prevent her from testifying in this case.

C.   **Exclusion of Ms. McCormick's Testimony is Appropriate Because She Failed to Produce Documents Requested By Plaintiffs While Producing the Same Materials to Intervenors**

Rule 45 allows for deposition subpoenas to include requests for documents relevant to the witnesses' testimony. *See* Fed. R. Civ. P. 45(a)(1)(C). "For purposes of discovery, relevance is liberally construed." *In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C.

2013).  "Discovery obtained from a nonparty pursuant to Rule 45 has 'the same scope as provided in Rule 26(b).'"  *Id.* (citation omitted).  Thus, "with respect to a Rule 45 subpoena, '[a] request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party.'"  *Id*. (citation omitted).  A resisting party bears the burden of establishing "that the requested discovery at issue has *no possible bearing* on the claims and defenses in th[e] case."  *Jeld-Wen Inc. v. Nebula Glass Intern., Inc.*, 2007 WL 1526649, at *2 (S.D. Fla. 2007) (emphasis added).  Further, this Court did not limit the parties' right to discovery of documents relevant to Ms. McCormick's testimony under Rule 45 either at the conference with the parties or in its Minute Order allowing the deposition of Ms. McCormick.

Notwithstanding the lack of any limitation from this Court, Plaintiffs' document requests are not overbroad and the documents Plaintiffs seek are undeniably responsive to the subpoena. *See* Exhibit A.  Indeed, she provided some of the materials called for by the subpoena to the Intervenors, who used them during their examination of her.  At a minimum, Ms. McCormick should have (but did not) produce those materials to Plaintiffs.

Ms. McCormick unilaterally decided to ignore the subpoena and refused to produce anything to Plaintiffs prior to her deposition (and indeed destroyed evidence responsive to these requests, *see supra* section II).  This is not permitted under the Federal Rules of Civil Procedure. *See Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. (UAW) v. N. L. R. B.*, 459 F.2d 1329, 1342 (D.C. Cir. 1972) ("It has never been thought that a party is free to pick and choose which parts of a subpoena it will obey and which parts it can ignore.").  As in *International Union*, sanctions are particularly appropriate when an individual engages in selective obedience of a subpoena because "***it demonstrates that the [subpoenaed party] was***

9

*quite capable of coming forward with evidence when it was favorable to its cause.*" *See id.* (finding the sanction of an adverse inference appropriate where subpoenaed party selectively complied with a subpoena to the extent compliance was helpful but ignored compliance when production of such documents would be harmful to that party's position) (emphasis added).

Plaintiffs' first three requests were narrowly tailored to seek evidence relevant to the precise issues Intervenor Kobach represented to the Court as a basis for deposing Ms. McCormick, including the issue of ex parte communications between the EAC and Kobach. Indeed, Kobach's own deposition notice of Ms. McCormick stated that the topic of "[r]outine ex parte communications by EAC commissioners with Secretaries of State, in the context of whether such communications constitutes forbidden 'ex parte' communication in the understanding of the EAC." Notice of Rule 30 Deposition, Feb. 29, 2016, Dkt. 38 Topic 3. The entire universe of Ms. McCormick's communications with Intervenors related to the issues in this case is relevant to this topic. Yet because of her failure to produce these communications, Plaintiffs were unable to ask her about such communications.

Plaintiffs' fourth and fifth requests could not have been overly broad because they simply requested that Ms. McCormick produce documents that she reviewed or planned to testify about, as such it was limited by Ms. McCormick herself. And Ms. McCormick had these documents and provided them to Intervenors prior to her deposition, while telling Plaintiffs she would not comply. *See* Ex. D ("Ms. McCormick will not be producing the documents you have identified prior to or at the deposition"). Such selective obedience—that the D.C. Circuit sanctioned in *International Union*— put Plaintiffs' on the defensive and should not be tolerated by this Court.[4]

---

[4] Ms. McCormick's counsel has raised two objections to attempt to justify Ms. McCormick's failure to comply with Plaintiff's subpoena. Both are without merit, and neither provided a basis for her to destroy responsive documents she had in her possession. First, Ms. McCormick

Footnote continued on next page

10

Ms. McCormick's failure to produce the documents requested by Plaintiffs prior to her deposition unfairly limited Plaintiffs ability to depose her on the topics relevant to this case. This Court should remedy that prejudice by excluding Ms. McCormick's deposition testimony.

**D.      Ms. McCormick's Testimony Should Be Excluded Because It Is Privileged And She Is Not Authorized to Waive the Government's Privilege**

As set forth above, much of Ms. McCormick's testimony involved communications between DOJ and the EAC during prior litigation regarding the State of Kansas's previous request to amend the Federal Form to include documentary proof of citizenship instructions. These communications involve draft briefs and other strategic conversations between DOJ lawyers and then acting EAC executive director, Alice Miller, and are protected by the attorney-client privilege or the work product doctrine. Indeed, the DOJ filed a motion for a protective order to prevent public disclosure of these documents. *See* Mot. for Protective Order, Mar. 1, 2016, Dkt. 39. This privilege belongs to the Government. Ms. McCormick, as an employee of the Government without authority to speak for the EAC (and without involvement in the

Footnote continued from previous page
objected that the response time on the subpoena was not sufficient for her to produce documents. *See* Exhibit D. But Ms. McCormick had at least some of the documents with her when she arrived at the deposition, yet did not produce them. Second, Ms. McCormick objected that the service of her subpoena (by email) was improper. *See* Exhibit D. Rule 45(b)(1) simply states that "serving a subpoena requires delivering a copy to the named person . . ." The rule does not "require in-hand delivery of subpoenas - so long as the service is in a manner that reasonably ensures actual receipt of the subpoena by the witness." *Hall v. Sullivan*, 229 F.R.D. 501, 506 (D. Md. 2005). *See generally Alfamodes Logistics Ltd. v. Catalent Pharma Solutions, LLC*, 2011 WL 1542670, at *2 n.5 (E.D. Pa. Apr. 25, 2011) (collecting cases reaching same conclusion). Moreover, Ms. McCormick previously served two communications on the parties to this litigation by email. Under Federal Rule of Civil Procedure 5(b)(2)(E) proper service includes "sending it by electronic means if the person consented in writing -- in which event service is complete upon transmission." By previously serving parties in the litigation by electronic means, Ms. McCormick tacitly consented to receive materials by electronic means. Given the course of dealing of the parties, as well as the expedited schedule, service by email was entirely proper under the circumstances. There is no reason to doubt Ms. McCormick received the subpoena and had notice of the document requests, and she has not claimed any prejudice from receiving service in this manner. Service by email was entirely proper under the circumstances here.

11

decision-making process at issue), does not have authority to waive the Government's privilege. Indeed, "communications remain privileged as long as the holder has acted reasonably in attempting to protect them, involuntary disclosures by third parties may render illusory the privilege's guarantee of privacy." *SEC v. Lavin*, 111 F.3d 921, 930 (D.C. Cir. 1997).  Here, DOJ, on behalf of the EAC, has taken every step reasonably necessary to attempt to stop Ms. McCormick from involuntarily waiving the privilege for the EAC and DOJ, by objecting to a deposition that was clearly sought with the intent to attempt to waive a privilege that Ms. McCormick does not hold, by filing a motion for a protective order to prevent public disclosure of privileged information, and by consistently objecting to the disclosure of privileged information at Ms. McCormick's deposition.

## Conclusion

Plaintiffs respectfully request that the Court grant Plaintiffs' motion, requiring Ms. McCormick and Intervenor-Defendants to preserve documents responsive to the subpoena or otherwise relevant to this case going forward, excluding Ms. McCormick's deposition testimony and Exhibits 8, 11 and 12, and preventing her from testifying in this case.

Dated:  March 7, 2016

Respectfully submitted,

By: /s/ John A. Freedman

John A. Freedman
D.C. Bar. No. 453075
ARNOLD & PORTER LLP
601 Massachusetts Ave., N.W.
Washington, DC 20001
(202) 942-5000
John.Freedman@aporter.com

Michelle Kanter Cohen

12

D.C. Bar No. 989164
PROJECT VOTE
1420 K Street, 7th Floor
Washington, DC 20005
(202) 546-4173
mkantercohen@projectvote.org

*Attorneys for Plaintiff Project Vote*

Amelia J. Schmidt
D.C. Bar No. 1012380
STROOCK & STROOCK & LAVAN LLP
1875 K Street NW
Washington, DC 20006
(202) 739-2800
aschmidt@stroock.com

Michael C. Keats
Joel T. Dodge*
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
(212) 806-5400
mkeats@stroock.com


Wendy R. Weiser*
Jonathan Brater*
Tomas Lopez*
Robert Ferguson*
BRENNAN CENTER FOR JUSTICE
161 Avenue of the Americas, 12th Floor
New York, New York 10013
(646) 292-8310
wendy.weiser@nyu.edu

Susan M. Davies
    D.C Bar No. 1015133
    D.D.C. Atty. No. 54867
Jonathan D. Janow
    D.C. Bar No. 1002399
    D.D.C. Atty. No. D00333
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW, Suite 1200
Washington, DC 20005
(202) 879-5000

13

susan.davies@kirkland.com
*Attorneys for Plaintiffs the League of Women Voters of the United States, the League of Women Voters of Kansas, the League of Women Voters of Alabama, and the League of Women Voters of Georgia*

Dale E. Ho
   D.D.C. Bar No. NY0142
Orion Danjuma*
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
dale.ho@aclu.org

Stephen Douglas Bonney*
ACLU FOUNDATION OF KANSAS
6701 W. 64th Street, Ste. 210
Overland Park, KS 66202
(913) 490-4102
dbonney@aclukansas.org

Jon M. Greenbaum
   D.C. Bar No. 489887
Ezra D. Rosenberg
   D.C. Bar No. 360927
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
   UNDER LAW
1401 New York Avenue, NW
Suite 400
Washington, DC 20005
(202) 662-8600
jgreenbaum@lawyerscommittee.org

*Attorneys for Plaintiffs Marvin Brown, JoAnn Brown, the Georgia State Conference of the NAACP, and Georgia Coalition for the People's Agenda*

Linda Stein
   D.C. Bar No. 376217
Errol R. Patterson

14

D.C. Bar No. 379715
Jason Abel
    D.C. Bar No. 490382
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
(202) 429-3000
lstein@steptoe.com

*Attorneys for Plaintiffs the Georgia State Conference of the NAACP, and Georgia Coalition for the People's Agenda*

*\*Pro hac vice motion pending*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of March, 2016, I electronically filed the

foregoing with the Clerk of the Court via the CM/ECF system, which will send a notice of

electronic filing to all Counsel of Record.

*/s/John A. Freedman*
John A. Freedman

16