**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, *et al.*, | Case No. 16-cv-236 (RJL) |
| *Plaintiffs*, | |
| v. | |
| BRIAN D. NEWBY, in his capacity as the Executive Director of The United States Election Assistance Commission; and | |
| THE UNITED STATES ELECTION ASSISTANCE COMMISSION | |
| *Defendants*, | |
| KANSAS SECRETARY OF STATE KRIS W. KOBACH and PUBLIC INTEREST LEGAL FOUNDATION | |
| *Defendant-Intervenors*. | |

**<u>INTERESTED PARTY CHRISTY A. McCORMICK'S
OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE
AND FOR A PRESERVATION ORDER</u>**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. iii

BACKGROUND ................................................................................................................1

STANDARDS ON A MOTION FOR A PRESERVATION ORDER...........................................4

ARGUMENT.....................................................................................................................5

I.      Plaintiffs Were Not Authorized to Serve a Subpoena *Duces Tecum*...................................5

II.     Ms. McCormick Was Not Required to Comply With the Subpoena
        Because Plaintiff Failed to Effect Personal Service as Required
        by Rule 45(b)(1)............................................................................................................5

III.    The Texts Between Ms. McCormick and Defendant-Intervenors and
        Their Counsel Are Utterly Irrelevant to the Issues in this Case ........................................9

CONCLUSION...................................................................................................................11

# TABLE OF AUTHORITIES

Page

## Federal Cases

*Abdah v. Bush*, 2005 U.S. Dist. LEXIS 17189 (D.D.C. June 10, 2005)...........................................4

*Alfamodes Logistics Ltd. v. Catalent Pharma Solutions, LLC*,
2011 U.S. Dist. LEXIS 44537 (E.D. Pa. Apr. 25, 2011) .......................................................7

*Bank of Oklahoma, N.A. v. Arnold*,
2008 U.S. Dist. LEXIS 12677 (N.D. Okla. Feb. 20, 2008) ...................................................6

*Battayav v. Bush*, 2005 U.S. Dist. LEXIS 49468 (D.D.C. May 19, 2005) .....................................4

*Call of the Wild Movie, LLC v. Does 1-1,062*,
770 F. Supp. 2d 332 (D.D.C. 2011) ...........................................................................5, 6, 7

*Citizens for Responsibility & Ethics in Wash. v. Cheney*,
577 F. Supp. 2d 328 (D.D.C. 2008) ......................................................................................4

*FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson*,
636 F.2d 1300 (D.C. Cir. 1980) ...........................................................................................6

*Hall v. Sullivan*, 229 F.R.D. 501 (D. Md. 2005)...........................................................................6-7

*Pueblo of Laguna v. United States*, 60 Fed. Cl. 133 (Fed. Cl. 2004) ..........................................4-5

*SEC v. Art Intellect, Inc.*,
2012 U.S. Dist. LEXIS 30894 (D. Utah Mar. 7, 2012) ........................................................6

*Shulman v. Amazon.com.KYDC LLC*,
2014 U.S. Dist. LEXIS 114586 (E.D. Ky. June 17, 2014) ...............................................6, 9

*True the Vote, Inc. v. IRS*,
2014 U.S. Dist. LEXIS 108562 (D.D.C. Aug. 7, 2014) ........................................................4

*United States v. Phillip Morris Inc.*, 312 F. Supp. 2d 27 (D.D.C. 2004)...................................5-6

## Rules

Fed. R. Civ. P. 5(b)(2)(E) ................................................................................................................7

Fed. R. Civ. P. 26(b)(1)..................................................................................................................10

Fed. R. Civ. P. 45...................................................................................................................*passim*

iii

Interested party Christy A. McCormick, in her capacity as a third-party witness and in her personal capacity, respectfully submits this memorandum of law in opposition to Plaintiffs' motion to exclude her testimony and for a preservation order (Doc. 54).

## **BACKGROUND**

The complaint in this action was filed on February 12, 2016.  Doc. 1.  It alleged violations of the Administrative Procedures Act stemming from the January 29, 2016, decision by Brian D. Newby, the Executive Director of the Election Assistance Commission (EAC), to accede to requests from Alabama, Georgia and Kansas to modify the state-specific instructions of the federal voter registration form, so as to require applicants to submit proof of U.S. citizenship.  Plaintiffs are a number of public interest non-profit groups and two individual residents of Kansas.  Defendants are Mr. Newby and the EAC.

Ms. McCormick is a commissioner of the EAC.  The complaint does not allege that she or any of the other commissioners of the EAC played any role in Mr. Newby's decision.  To the contrary, one of the claims in the complaint is expressly premised on the fact that Mr. Newby did not "obtain the approval of three Commissioners" as, it is alleged, he was required to do.  Doc. 1, ¶ 2.  The complaint explains that the EAC is "named as a party due to the actions of the agency's Executive Director," Mr. Newby.  *Id.*, ¶ 17.  There are no allegations specifically pertaining to Ms. McCormick, and, indeed, she is not mentioned by name anywhere in the complaint.

On February 17, 2016, Plaintiffs moved for a temporary restraining order and a preliminary injunction.  On February 22, 2016, the U.S. Department of Justice, on behalf of Defendants Mr. Newby and the EAC, filed a response that consented to the entry of a preliminary injunction.  Doc. 28.

This filing first made clear the remarkable posture of the Department of Justice, which, in its capacity as Defendants' attorney, is actively opposing the administrative decision made by a representative of the EAC, an independent U.S. agency.  On February 22, 2016, this Court granted the motions of Mr. Kris Kobach, Kansas' Secretary of State, and of the Public Interest Legal Foundation (PILF), to intervene as defendants.  At the hearing on the motion for a temporary restraining order that same day, the Court read into the record a letter from Ms. McCormick, stating that the Department of Justice "has determined that the initial action taken" by Mr. Newby "is contrary to their interpretation of the law," that "they have informed the EAC that they are unable to defend the action," and that they have prohibited the EAC "from obtaining outside counsel" who might take a different position.  Letter from Christy A. McCormick and Brian D. Newby to Judge Richard J. Leon, dated February 22, 2016.  The next day, the Court issued an order denying Plaintiffs' motion for a temporary restraining order.  Doc. 34.  Plaintiffs' request for a preliminary injunction is still pending.

On February 29, 2016, this Court authorized limited discovery in this matter in the form of a deposition of EAC Commissioner Christy A. McCormick.  That Minute Order states in its entirety:

> On February 29, 2016, the Court held a conference call to hear any requests for expedited discovery in the above-captioned case.  Upon due consideration of the parties' oral arguments it is hereby ORDERED that defendant-intervenor the Kansas Secretary of State's request to depose Commissioner Christy McCormick is GRANTED.  Her deposition, however, must be taken on or before March 2, 2016 in Washington, D.C.  It is further ORDERED that each side shall have up to two hours to examine the deponent.  Signed by Judge Richard J. Leon on 2/29/2016.

No further discovery was authorized by that Order, or by any other order issued in this case.

Nevertheless, that same day, Plaintiffs sent a subpoena to Ms. McCormick by email. Doc. 54-2 at 7.  That subpoena purported to demand that she conduct an appropriate search to

2

locate a broad array of documents, including, for example, "Any communications with Kobach, the Public Interest Law Foundation, or the Kansas Secretary of State that relate to this litigation or the allegations in the complaint." Doc. 54-2 at 6. On March 1, 2016, Ms. McCormick traveled from Williamsburg, Virginia to Washington, D.C. to meet with the undersigned counsel. Popper Decl., ¶ 2. In an email exchange with Plaintiffs' counsel, Mr. Popper explained why Ms. McCormick could not and would not bring documents responsive to the subpoena emailed to Ms. McCormick, citing the burden, the impossible time frame, and lack of proper service. Doc. 54-5.

Ms. McCormick's deposition was conducted the next day, March 2, 2016. At that deposition, it became clear that the Department of Justice would not represent and defend Ms. McCormick, but that it would cede that role to Mr. Popper. Popper Decl., ¶ 3. Instead, counsel for the Department of Justice sought to conduct a hostile examination of Ms. McCormick – who was, it must be remembered, their client when acting in her official capacity – and sought to use time allotted to Plaintiffs in order to do so. *Id.*

At that deposition, questions were asked regarding texts sent and received between Ms. McCormick and Defendant-Intervenor Kobach, and communications with Christian Adams, counsel for Defendant-Intervenor PILF. The texts with Mr. Kobach were sent and received after Mr. Kobach had been granted intervenor status, and concerned Ms. McCormick's availability for a deposition. Popper Decl., Ex. A at 135. Ms. McCormick testified that she deleted all of her texts with Mr. Kobach, which is her normal practice with all texts that are not family related. *Id.*, Ex. A at 132. As she is friends with Mr. Adams, Ms. McCormick has communicated with him hundreds of times, but only by email. *Id.*, Ex. A at 127. Those communications were not by text, as Mr. Adams does not text. *Id.*, Ex. A at 136-37.

3

As set forth herein, Plaintiffs' motion should be denied, (1) because Plaintiffs were not authorized by this Court's order to make a request for documents, (2) because Plaintiffs' subpoena was only served by email, and it is well-settled that this does not constitute the personal service required by Rule 45 of the Federal Rules of Civil Procedure, and (3) because in any event the text messages to and from Mr. Kobach, which are the only deleted texts that Plaintiffs had hoped to subpoena, are utterly irrelevant to any issue in this case.[1]

## STANDARDS ON A MOTION FOR A PRESERVATION ORDER

There is a split of authority in this Court regarding the standard a movant must meet to justify a request for a preservation order. Some decisions require a movant to make all of the showings necessary for injunctive relief, including the likelihood of success on the merits. *See Battayav v. Bush*, 2005 U.S. Dist. LEXIS 49468 at*6 (D.D.C. May 19, 2005) (a "motion to preserve evidence is an injunctive remedy and should issue only upon an adequate showing that equitable relief is warranted") (citations and internal quotation marks omitted); *True the Vote, Inc. v. IRS*, 2014 U.S. Dist. LEXIS 108562 at *20 (D.D.C. Aug. 7, 2014) ("members of this Court have found that a showing of likelihood of success is necessary where a plaintiff seeks a preservation order through a preliminary injunction motion"), citing *Citizens for Responsibility & Ethics in Wash. v. Cheney*, 577 F. Supp. 2d 328, 333-36 (D.D.C. 2008).

Other decisions maintain that the standard is not as demanding as that required for preliminary relief. *See Abdah v. Bush*, 2005 U.S. Dist. LEXIS 17189 at *4 (D.D.C. June 10, 2005) ("petitioners need not meet the four-part preliminary injunction test"), citing *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138 n. 8 (Fed. Cl. 2004) ("one seeking a preservation

---

[1] Plaintiffs' arguments regarding exclusion and claims of confidentiality already have been partly briefed and argued in relation to Plaintiffs' motion for temporary and preliminary relief, and are better left to the parties to address. Thus, these issues will not be addressed by Ms. McCormick.

order [must] demonstrate that it is necessary and not unduly burdensome.").  Plaintiffs maintain that the latter standard should apply.  Doc. 54 at 4.

Ms. McCormick respectfully suggests that in this case the standard should be the same as that for injunctive relief.  First, there is no federal rule specifically authorizing a motion for a preservation order.  Moreover, given Plaintiffs' broad requested relief, their motion is best interpreted as one for an injunction, and it should be judged by the same standards.  In any event, Plaintiffs cannot even meet the more forgiving standard they favor, namely, a showing that a preservation order is "necessary and not unduly burdensome."  Under either standard their request for a preservation order should be denied.

## ARGUMENT

### I.      Plaintiffs Were Not Authorized to Serve a Subpoena *Duces Tecum*.

This Court's Minute Order of February 29, 2016, governs the permissible discovery that could be obtained from Ms. McCormick.  Nothing in that order authorizes any request for documents, let alone the issuance of a subpoena *duces tecum*.  Plaintiffs were taking liberties with this Court's Order when they emailed a subpoena to Ms. McCormick.  As the subpoena was an attempt at unauthorized discovery, Ms. McCormick's failure to respond to it cannot be the basis for any of the relief Plaintiffs seek in this motion.

### II.     Ms. McCormick Was Not Required to Comply With the Subpoena Because Plaintiff Failed to Effect Personal Service as Required by Rule 45(b)(1).

A subpoena must be served pursuant to Fed. R. Civ. P. 45.  This Court has held that Rule 45(b)(1) is to be literally construed so as to require personal service of a subpoena on a named witness.  *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 362 (D.D.C. 2011) (requiring "strict adherence" to the personal service requirements of Rule 45(b)(1) and quashing a subpoena for improper service even where the witness acknowledges receipt); *United States v.*

5

*Phillip Morris Inc.*, 312 F. Supp. 2d 27, 37-38 (D.D.C. 2004) (quashing a subpoena that was delivered to the mail room of the Department of Justice because Rule 45(b)(1) "requires personal service of deposition subpoenas"); *see also FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson*, 636 F.2d 1300, 1312-1313 (D.C. Cir. 1980) (distinguishing between other methods of service and the narrow reading of Rule 45).

It is undisputed that the subpoena at issue here was served only by email to Ms. McCormick.  Doc. 54-2 at 7.[2]  This method of service is invalid.  This Court has held that email service of a Rule 45 subpoena is not proper, personal service.  *See Call of the Wild Movie, LLC*, 770 F. Supp. 2d at 361, 362 (plaintiff who failed to "take steps to deliver the subpoena personally and relied solely upon service by fax and email" had not complied with Rule 45(b)(1)).  As far as the undersigned counsel are able to ascertain, every other court that has addressed this issue has reached the same conclusion.  *See Shulman v. Amazon.com.KYDC LLC*, 2014 U.S. Dist. LEXIS 114586 at *8 (E.D. Ky. June 17, 2014), *aff'd*, 2014 U.S. Dist. LEXIS 113506 (E.D. Ky. Aug. 15, 2014) ("electronic service is not what Rule 45(b)(1) requires"); *SEC v. Art Intellect, Inc.*, 2012 U.S. Dist. LEXIS 30894 at *9 (D. Utah Mar. 7, 2012) ("A subpoena under Rule 45 is not properly served by email or fax, but must be served personally."), citing *Bank of Oklahoma, N.A. v. Arnold*, 2008 U.S. Dist. LEXIS 12677 at *8 (N.D. Okla. Feb. 20, 2008) ("the Court declines the government's invitation to interpret Rule 45(b)(1) so broadly as to allow service of a subpoena by email or facsimile").

Plaintiffs cite no case where email service of a Rule 45 subpoena was held to be proper service.  Plaintiffs do argue that Rule 45 does not "require in-hand delivery of subpoenas – so

---

[2] Indeed, Plaintiffs did not even try to serve Ms. McCormick by other means, although they easily could have done so.  For example, Plaintiffs could have handed her a subpoena when she appeared to attend her deposition on March 2, 2016.

6

long as the service is in a manner that reasonably ensures actual receipt of the subpoena by the witness." Doc. 54 at 11 n. 4, quoting *Hall v. Sullivan*, 229 F.R.D. 501, 506 (D. Md. 2005), and citing *Alfamodes Logistics Ltd. v. Catalent Pharma Solutions, LLC*, 2011 U.S. Dist. LEXIS 44537 at *6 n. 5 (E.D. Pa. Apr. 25, 2011). Plaintiffs' argument is fundamentally flawed. To begin with, neither case addressed – let alone authorized – email or other electronic service. The court in *Hall* denied a motion to quash a subpoena served by Federal Express. 229 F.R.D. at 506. The court in *Alfamodes* rejected a request for sanctions, on the grounds that the subpoena at issue had *not* been personally served as required by Rule 45. 2011 U.S. Dist. LEXIS 44537 at *2-3.

But further, this Court has explicitly rejected the expansive approach to personal service described by Plaintiffs. Expressly referring to the *Hall* decision, this Court remarked that, while a "minority of courts have broadened the interpretation of Rule 45(b) and held that personal in-hand service is not required," courts "in this jurisdiction have not followed this path." *Call of the Wild Movie, LLC*, 770 F. Supp. 2d at 361 (citations omitted).

Plaintiffs next suggest that Ms. McCormick "tacitly consented" to email service, under Fed. R. Civ. P. 5(b)(2)(E), by "previously serv[ing] two communications on the parties to this litigation by email." Doc. 54 at 11 n. 4. There are several basic flaws with this argument. Rule 5(b)(2)(E) allows electronic service where a person "has consented in writing." The advisory committee notes emphasize that "[t]he consent must be express, and cannot be implied from conduct." Fed. R. Civ. P. 5 advisory committee notes on 2001 Amendment (regarding former Rule 5(b)(2)(D), now (E)). The plain text of the rule and the advisory committee notes highlight the fundamental problem with any attempt by Plaintiffs to argue that Ms. McCormick consented to service: How is it possible for Ms. McCormick to have "tacitly consented" under a provision

7

that requires express, written consent?  Plaintiffs cite no case in which email communications constitute "tacit consent" under Rule 5 to email service of a subpoena in lieu of personal service.

Moreover, Plaintiffs never identify which communications they believe to have been previously "served" (by which they seem to mean emailed).  Plaintiffs may be referring to the two emails sent by Ms. McCormick's personal attorney, which are contained in Doc. 54-5.  If so, it is important to note that those emails were sent after the subpoena was emailed to Ms. McCormick.  Indeed, they discuss and refer to that subpoena.  *See* Doc. 54-5.  Are Plaintiffs suggesting, then, that by virtue of those emails, Ms. McCormick "tacitly consented" to service *after* she received the subpoena?  Plaintiffs cite no case supporting such an extraordinary principle or finding "after the fact" consent to email service.

In the alternative, Plaintiffs may mean that certain communications or service made through the Court's ECF system by the Department of Justice, in its capacity as the EAC's attorney, constituted acceptance of service by email by Ms. McCormick, in her official capacity as an EAC Commissioner.  There are equally fundamental problems with this claim.  First, the parties maintained or accepted that Ms. McCormick was being deposed in her personal capacity. *See* Popper Decl., Ex. A at 211 (Department of Justice indicating that it believed Ms. McCormick was testifying "in her personal capacity."); Doc. 54-5 (March 1, 2016 emails from Robert D. Popper as "Ms. McCormick's personal attorney" and from John A. Freedman, referring to "your client[]").  Second, the consents that accompany registration for the ECF system plainly provide that "[a]n attorney's/participant's *registration will not waive conventional service of a summons and complaint, subpoena, or other judicial process*; [or] submit the client to the jurisdiction of the Court."  Popper Decl., Ex. B, ¶ 3 (emphasis added).

Whichever emails Plaintiffs may be referring to, there simply is no way to make sense of the resulting mass of non-sequiturs.  Ms. McCormick never consented to email service of Plaintiffs' subpoena.

Because email service of a Rule 45 subpoena is not valid personal service, Plaintiffs' subpoena was never properly served.  As a result, Ms. McCormick was not obligated to respond to it.  *See Shulman,* 2014 U.S. Dist. LEXIS 114586 at \*9 (where a subpoena was, among other things, improperly served, "the Court treats the subpoena itself as a nullity," and the recipient is not required "to read or obey that forceless document").  Accordingly, her failure to respond to that subpoena is not a basis for granting any of the relief Plaintiffs seek.

**III.     The Texts Between Ms. McCormick and Defendant-Intervenors and Their Counsel Are Utterly Irrelevant to the Issues in this Case.**

As a final matter, it must be noted that even if this Court had authorized document discovery, and even if Plaintiffs had personally served Ms. McCormick, the texts Plaintiffs claim to be so exercised about are utterly and completely irrelevant to this case.  Thus, a preservation order is not "necessary," because the subject communications have nothing to do with the proof or disproof of Plaintiffs' claim.

The decision that is challenged in the complaint was alleged to have been made by Defendant Newby on January 29, 2016.  Doc. 1, ¶ 29.  The complaint does not allege that the commissioners of the EAC played any role in Mr. Newby's decision.  The EAC is "named as a party due to the actions of the agency's Executive Director," Mr. Newby.  Id., ¶ 17.  The complaint does not mention Ms. McCormick at all.

Absent from Plaintiffs' motion is any coherent account of how Ms. McCormick's texts to and from Mr. Kobach, after he was granted Defendant-Intervenor status on February 22, 2016, regarding her availability for a deposition, are relevant to any of the claims in the complaint.

9

These texts obviously had no effect on Mr. Newby's decision, which already had been made and implemented. Plaintiffs do suggest in the broadest possible terms that Ms. McCormick's communications with intervenors are relevant to "the issue of ex parte communications between the EAC and Kobach." Doc. 54 at 10. Plaintiffs add expansively that "[t]he entire universe of Ms. McCormick's communications with Intervenors related to the issues in this case is relevant to this topic." *Id.*

There are numerous problems with this argument. First, it remains true that all communications – even *ex parte* communications – taking place after Mr. Newby has made his decision can have no causal effect on, or relationship to, that decision. Plaintiffs fail to state how these communications can possibly explain that decision. It is worth noting, moreover, that the cases concerning relevance cited by Plaintiffs (Doc. 54 at 9) were decided under the old Rule 26. The new rule, in place since December 1, 2015, provides that "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case*, considering" a variety of factors that the rule then sets forth, including "*the importance of the discovery in resolving the issues*." Fed. R. Civ. P. 26(b)(1) (emphasis added). Whatever possible relevance Plaintiffs may creatively assert or imagine, Ms. McCormicks' texts to Mr. Kobach concerning her deposition have no *practical* relevance to the issues in this case.

Second, any factual or legal disputes pertaining to *ex parte* communications with Mr. Kobach obviously have nothing whatsoever to do with communications with Mr. Adams or the non-profit PILF. Yet Plaintiffs' subpoena also seeks Ms. McCormick's communications with Mr. Adams and PILF. Doc. 52-2 at 6. Plaintiffs offer no rationale for this request.

10

Third, communications with Mr. Kobach after he has been granted leave to act as a Defendant-Intervenor and to appear as an attorney in this matter obviously have a different character than communications with Mr. Kobach acting in his capacity as Kansas' Secretary of State.  This is particularly clear where the communications at issue concern, as Ms. McCormick testified, her availability for her deposition.

Indeed, given the Department of Justice's announced unwillingness to defend either the EAC's decision or Ms. McCormick, and given its refusal to allow the EAC to hire other counsel with a more favorable view of the EAC's action, Plaintiffs' efforts to subpoena communications between Ms. McCormick and the Defendant-Intervenors and their attorneys, who *are* willing to actively defend the EAC, smacks of gamesmanship and harassment – not legitimate discovery.

## <u>CONCLUSION</u>

For the foregoing reasons, interested party Christy A. McCormick respectfully requests that Plaintiffs' motion to exclude her testimony and for a preservation order be denied.

Dated:  March 24, 2016

Respectfully submitted,

Robert D. Popper, *Pro Hac Vice* Motion Pending
**JUDICIAL WATCH, INC.**

 *s/ Chris Fedeli*
Chris Fedeli, DC Bar No. 472919
**JUDICIAL WATCH, INC.**

425 Third Street SW, Suite 800
Washington, DC 20024
Tel: (202) 646-5172
rpopper@judicialwatch.org
cfedeli@judicialwatch.org

*Attorneys for Christy A. McCormick*

11